UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

BOUSA, INC. f/k/a BULK OIL (USA) INC.,

    Debtor.
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/15/05

**MEMORANDUM ORDER**

05 Civ. 230 (PKL)
89 B. 13380 (CB)

**LEISURE, District Judge:**

    The United States appeals to this Court for relief from an Order denying its motion to offset its debt owed to Debtor, BOUSA, Inc. ("BOUSA" or "Debtor") against the debt BOUSA owes to the Government. The Order submitted for review was issued by Judge Cornelius Blackshear of the United States Bankruptcy Court for the Southern District of New York[1] on November 18, 2004. The Government sought relief from an automatic stay issued when BOUSA filed its petition for bankruptcy protection pursuant to Chapter 11 of the United States Bankruptcy Code on December 29, 1989. The Government was attempting to setoff allegedly pre-petition debts owed by BOUSA to the Internal Revenue Service ("IRS"), the Environmental Protection Agency ("EPA"), and the, then United States Customs Service, now, Department of Homeland Security, U.S. Customs and Border Protection ("Customs"). The Government planned to setoff BOUSA's debts against the debts that the United States Court of International Trade ("CIT") found the Government owed to BOUSA, arising from Customs' misclassification of BOUSA's tariff obligations on two shipments of petroleum products BOUSA imported in 1985 and 1986. CIT found the Government owed BOUSA $4,361,473.18 plus statutory interest running from the date of Custom's mistaken tariff entry. The Government has paid

---

[1]     Judge Blackshear retired from the Bench in March 2005.

$2,384,298.66 to date, but is holding the remainder in abeyance in the hopes of exercising a setoff of the $1,571,426.63 debt owed by BOUSA to the Government. The Court details the facts of this appeal below and remands this proceeding back to the Bankruptcy Court for findings of fact and conclusions of law sufficient to effect an appeal of that Court's denial of the Government's motion to lift the stay and effect a setoff.

## BACKGROUND[2]

I. Parties

The Government, as appellant in this matter, acts on behalf of three separate agencies, EPA, IRS, and Customs.

BOUSA is a New York corporation that imported petroleum products into the United States. See In re Bousa, 209 B.R. 29, 29 (S.D.N.Y. 1997) (Leisure, J.). Prior to filing for bankruptcy protection, BOUSA had annual sales of over $500,000,000 from its trading and marketing of liquid petroleum. (Disclosure Statement and Liquidating Plan of Reorganization of BOUSA, Inc., Affidavit of Kevin G. W. Olson, Esq., dated Apr. 28, 2004 ("Olson Aff.") Ex. J at 5.) BOUSA was forced to file for bankruptcy protection in the wake of falling oil prices, creditors' claims of over $400,000,000, and BOUSA's European affiliates' financial hardships. Id. BOUSA filed for Chapter 11 protection on December 29, 1989.

II. BOUSA's Debts to the Government

The IRS, EPA, and Customs all filed proofs of claim with the Bankruptcy Court handling BOUSA's Chapter 11 petition, for debts arising out of unrelated transactions.

---

[2] The parties generally agree on the underlying facts of this appeal, though they do not agree on the legal implication of those facts. Thus, unless otherwise noted, the following facts are not in dispute.

A. Debt to the EPA

On October 5, 1990, the EPA filed a proof of claim with the Bankruptcy Court for an unsecured nonpriority claim of $536,250. (Olson Aff. Ex. I.) The EPA noted on an attached Rider that the claim would satisfy the outstanding balance of BOUSA's liability arising out of a settlement agreement with the EPA for violating Section 211 of the Clean Air Act, 42 U.S.C. § 7545(c). (Id.) BOUSA and the EPA entered into the settlement agreement on December 15, 1987. (Id. Ex. J at 5.) The EPA Settlement Agreement detailed BOUSA's environmental failings in 1985 through 1986 and obligated BOUSA to remit $1,175,000 in semi-yearly installments to be completed on December 31, 1990. (Id. at 3.) However, because BOUSA filed for bankruptcy protection on December 29, 1989, it did not complete the payments.

B. Debt to the IRS

On August 16, 1993, the IRS filed a proof of claim with the Bankruptcy Court for a priority amount of $148,420.24 and a general amount of $4,261.53, totaling $152,681.77. The IRS's claim estimated BOUSA's liability for failure to file tax returns covering dates in 1988 and 1999. (Id. Ex. G.) The IRS Claim states that it is not subject to any setoff or counterclaim. (Id.)

C. Debt to Customs

On April 26, 1990, Customs filed a proof of claim for an unsecured and unidentified amount.[3] On January 28, 1992,[4] Customs entered an amended proof of claim for a unsecured

---

[3] Only BOUSA directly refers to this first filing in its appellate brief, but it neither mentions the amount claimed nor cites to a document on the record containing this claim. (Debtor-Appellee BOUSA's Memorandum of Law in Opposition to the Appeal by the United States of the Order Denying its Motion to Lift the Automatic Stay and Effect a Setoff ("BOUSA Opp'n") at 6.)

[4] Both parties identify this as the date Customs filed its amended proof of claim. (Appellant Government's Memorandum of Law in Support of the Government's Appeal from the Order of the Bankruptcy Court Denying the Government's Motion for a Setoff ("Gov. Mem.") at 5; BOUSA Opp'n at 6.) However, the signature line of the cited document is dated

3

nonpriority claim of $882,494.86. (Vargas Decl. June 7, 2004 Ex. A.) The claim arose out of BOUSA's failure to pay Customs duties imposed on eight shipments of petroleum products and interest on those duties.

III.   BOUSA's Liquidation Plan and First Customs Litigation

On May 24, 1995, BOUSA initiated litigation against Customs regarding the tariff classification of six of the eight entries mentioned above. (Id. Ex. B.) This Court withdrew the reference to the Bankruptcy Court of that litigation, and a motion to amend the complaint is currently pending before this Court. (Id. Ex. C.)

On July 31, 1995, the Bankruptcy Court approved BOUSA's Plan for liquidation and reorganization. (Olson Decl. Ex. L.) The IRS withdrew its objection to the Plan by stipulation, stating that, because it appeared BOUSA would be unable to satisfy its debt to the IRS unless it recovered in a separate litigation, described *infra* Part IV., it would not object so long as the proceeds of that litigation went toward the IRS debt. (See id. Ex. K.)

IV.   Government's Debt to BOUSA – CIT Litigation

On April 21, 2003, the CIT entered judgment for BOUSA against Customs regarding import duties assessed by Customs and paid by BOUSA in 1986 and 1987, granting BOUSA a refund of $4,361,473.18. Bousa, Inc. v. United States, No. 90-12-00658 (Ct. Int'l Trade Apr. 21, 2003). Customs paid BOUSA $2,384,298.66 on August 25, 2003 (Declaration of Bruce W. Ingalls, attached to Government's Notice of Motion, dated February 13, 2004, ¶ 5), but has held the remainder, $1,977,174.52, "in abeyance" pending disposition of its motion to lift the stay and effect a setoff (Gov. Mem. at 7).

---

November 7, 1991. (Declaration of Jeanette A. Vargas, Esq., dated June 7, 2004 ("Vargas Decl. June 7, 2004") Ex. A.) The date discrepancy does not materially affect this Court's disposition of the present motion, therefore it is left unresolved.

4

V. <u>Government's Motion to Lift the Stay and Effect a Setoff</u>

The EPA and IRS filed motions with the Bankruptcy Court for relief from the automatic stay on February 13, 2004. Customs' motion followed on June 7, 2004. The Bankruptcy Court consolidated the motions and heard oral argument on October 27, 2004. The Bankruptcy Court did not clearly identify any findings of fact or conclusions of law in denying the Government's motions. At the hearing, the Government argued for relief from the stay pursuant to 11 U.S.C. § 362(d)(1). (Transcript of Oral Argument, dated October 27, 2004 ("Tr.") at 29.) However, this statute allegedly justifying relief was mentioned only in passing, as the parties focused on whether the Government had waived its right to setoff by failing to assert their alleged right earlier in the tortured history of BOUSA's bankruptcy, District Court, and CIT proceedings. BOUSA also argued that the Government had violated the automatic stay by withholding the balance of the CIT action "in abeyance." (See Tr. at 8; BOUSA's Opp'n at 26-27.) Relying on the Supreme Court's decision in <u>Citizens Bank of Md. v. Strumpf</u>, 516 U.S. 16, 20 (1995), the Government argued that its actions did not improperly effect a setoff as the Government did not intend to effect a setoff, no actions were taken to so effect, and there were no records of a setoff. (Tr. 12-13.) In a rare tip of its hand, the Bankruptcy Court indicated that it was disinclined to follow controlling Supreme Court caselaw, instead hinting it would distinguish <u>Strumpf</u> from the facts at hand. (Tr. 13-16.) The Bankruptcy Court did appear to conclude that the Government was proceeding as an unsecured creditor. (Tr. 35-37.) However, that lone finding is of no moment here, as it is unopposed by the Government and not the subject of this appeal.

Following the parties' arguments, Judge Blackshear ruled that the Government's motion was denied and reserved the right to issue a written opinion if any party appealed his ruling. The Government filed a timely appeal on November 29, 2004. The only written memorialization of

5

Judge Blackshear's denial of the Government's motions was issued on November 18, 2004, and stated that, upon consideration of the parties briefs, pleadings, exhibits, and oral argument, "pursuant to the Court's rulings stated on the record in open court with respect to the Government's Motions," those motions were denied. (Bankruptcy Court's Order dated November 18, 2004.)

## DISCUSSION

Federal Rule of Bankruptcy Procedure 8013 frames this Court's review of the Bankruptcy Court decision: "[T]he district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact . . . shall not be set aside unless clearly erroneous." Fed. R. Bankr. P. 8013. Conclusions of law or conclusions of mixed law and fact are reviewed *de novo*. In re Adelphia Communs. Corp., 298 B.R. 49, 52 (S.D.N.Y. 2003). But, "[a] bankruptcy judge's decision to lift an automatic stay is review able only for an abuse of discretion. 'Reviewable-for-abuse-of-discretion, however, does not mean unreviewable.'" Stoltz v. Brattleboro Hous. Auth., 259 B.R. 255, 258 (D. Vt. 2001) (quoting Mazzeo v. Lennard (In re Mazzeo), 167 F.3d 139, 142 (2d Cir. 1999)); see also In re Adelphia, 298 B.R. at 52. The Second Circuit reviews this Court's appellate analysis of a Bankruptcy Court's decision *de novo*, "mindful that the original decision to lift the stay may be overturned only for an abuse of discretion." Schneiderman v. Bogdanovich (In re Bogdanovich), 292 F.3d 104, 109 (2d Cir. 2002) (citation omitted).

A Bankruptcy Court Order denying a request for relief from an automatic stay, such as the one at issue here, is governed by Federal Rule of Civil Procedure 52(a). Mazzeo, 167 F.3d at 142. Rule 52(a) requires that:

> in all actions tried upon the facts without a jury . . ., the court shall find the facts specially and state separately its conclusions of law thereon. . . . It will be

6

> sufficient if the findings of fact and conclusions of law are stated orally and recorded in open court . . . or appear in an opinion or memorandum of decision filed by the court.

Fed. R. Civ. P. 52(a). While the court need not "include punctilious detail," its findings of fact and conclusions of law must be sufficiently detailed to allow for "meaningful appellate review." Mazzeo, 167 F.3d at 142. "[W]here such findings and conclusions are lacking, we may vacate and remand." Id. (citations omitted).

A court's determination of whether it should lift a stay for cause under 11 U.S.C. § 362(d)(1) is a fact specific inquiry governed by the twelve factors laid out in Sonnax v. Tricomponent Prod. Corp (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1286 (2d Cir. 1995). While not all of the factors will be relevant in every case, and certainly not all will be relevant in the instant procedurally distinct matter, where the bankruptcy court fails to "mention Sonnax, or any doctrinal framework, and it is unclear whether that court considered any of the Sonnax factors," the reviewing court should vacate and remand for further findings. Mazzeo, 167 F.3d at 143; see also Sinatra v. Gucci (In re Gucci), 309 B.R. 679, 685 (S.D.N.Y. 2004) (vacating and remanding where, though the bankruptcy court's grant of plaintiff's sought relief implicitly rejected defendant's defense of laches, that court did not discuss the defense or its elements); B.N. Realty Assocs. v. Lichtenstein, 238 B.R. 249, 253 (S.D.N.Y. 1999) (vacating and remanding because "[t]he issue of whether to lift the [automatic] stay requires a factual determination based on a number of factors which – according to the record of the proceedings below – was not undertaken"); cf. In re Godt, 282 B.R. 577, 584-585 (S.D.N.Y. 2002) (distinguishing the bankruptcy court's oral ruling from Mazzeo where "the Bankruptcy Court referred to the Sonnax factors and noted the relevant factors applicable to the motion").

7

Unfortunately, here, the Court is faced with a complete lack of identifiable reasoning in the underlying decision from the Bankruptcy Court. This cannot support a meaningful review of its decision for it does not meet the bare minimum obligation that the Bankruptcy Court "make brief, definite, and pertinent findings and conclusions upon contested matters." Mazzeo, 167 F.3d at 142. It is troubling that the Bankruptcy Court alluded to its inclination to disregard Supreme Court caselaw, however, as that line of reasoning was abandoned without resolution, the Court cannot determine the Bankruptcy Court's meaning. In sum, this Court simply has nothing to review and must vacate and remand for further findings. It would be error to do otherwise. See id. at 143 (vacating the district court's affirmation of the bankruptcy court's order where based on insufficient findings to support meaningful appellate review). Thus, the Court renders no opinion regarding the merit of the Government's motions but rather must await the Bankruptcy Court's rationale before disposing of an appeal, should one be taken after further findings.

## CONCLUSION

Because the Bankruptcy Court did not provide sufficient findings of fact or conclusions of law in order to warrant meaningful appellate review of its denial of the Government's motions to lift the automatic stay and effect a setoff, this Court vacates the Bankruptcy Court's Order and remands for further findings.

**SO ORDERED.**

New York, New York
June 13, 2005

_____
U.S.D.J.

Copies of this Memorandum Opinion have been electronically sent to the parties below:

Jeannette A. Vargas, Esq.
United States Attorney's Office
Southern District of New York
86 Chambers Street, 4th Floor
New York, NY 10007

Richard N. Chassin, Esq.
Becker, Glynn, Melamed & Muffly LLP
299 Park Avenue
New York, NY 10171